**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TERESA MARTINO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-1326 |
| v. | : | |
| | : | |
| SETERUS, INC., | : | JULY 23, 2018 |
| Defendant. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 47)**

## I.    INTRODUCTION

The plaintiff, Teresa Martino, filed the Amended Complaint on November 6,

2017.  See Amended Complaint ("Am. Compl.") (Doc. No. 30).  In it, Martino brings

three claims against the defendant Seterus, Inc. ("Seterus") for breach of contract,

negligence, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  See

id.  Seterus filed a Motion to Dismiss the Amended Complaint on January 15, 2018.

See Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 47).

For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART**

**AND DENIED IN PART**.

## II.    FACTS

The Amended Complaint alleges the following facts.[1]  Teresa Martino entered

into a mortgage agreement with Bank of America, Inc. ("Bank of America") regarding the

loan on her home, which was purchased in 2000.  See Am. Compl. at ¶¶ 8–9.  In 2014,

Martino began facing financial hardship and fell behind on her mortgage payments.

See id. at ¶ 10.  In February 2015, Martino applied for a loan modification with Bank of

---

[1] The court accepts all factual allegations in the Amended Complaint as true for purposes of the Motion to Dismiss.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

America.  See id. at ¶ 12.  Martino alleges that she completed the Trial Period Plan and followed Bank of America's instructions in order to finalize her loan modification ("June 2015 Agreement"), but Bank of America claimed that it never received the signed June 2015 Agreement.[2]  See id. at ¶¶ 12–23.  In October 2015, Bank of America told Martino it would not honor the June 2015 Agreement.  See id. at ¶ 26.  At Bank of America's instruction, Martino submitted a new application for loan modification.  See id. at ¶ 27.

In November 2015, Bank of America notified Martino that her loan would be transferred to Seterus for servicing on December 1, 2015.  See id. at ¶ 29.  In December 2015, Bank of America sent Martino a letter acknowledging that she had submitted all necessary documents to be considered for a modification.  See id. at ¶ 30.  However, Bank of America did not inform Seterus of the history and status of Martino's loan or of her completed application for loan modification when it transferred the loan to Seterus.  See id. at ¶ 31.  Martino communicated this information to Seterus and alleges that Seterus "either did not receive documentation of Ms. Martino's loan history and failed to follow up with Bank of America to obtain it, or it refused to review and acknowledge the documentation it received."  See id. at ¶ 32.

Seterus refused to acknowledge the June 2015 Agreement or Martino's reapplication for a loan modification submitted to Bank of America.  See id. at ¶ 33.  Martino reapplied for loan modification assistance with Seterus and completed the Trial Period Plan in February 2016.  See id. at ¶¶ 34–35.  Seterus offered Martino a

---

[2] The court omits the details of Martino's alleged interactions with Bank of America because Bank of America is no longer a defendant in the case, as Martino stipulated to dismiss with prejudice all claims against Bank of America.  See Stipulation of Dismissal (Doc. No. 57).  The court only includes facts to the extent they are relevant to Martino's claims against Seterus.

permanent Loan Modification Agreement in May 2016, with monthly payments of $1,367.08. See id. at ¶ 36. Martino was unhappy with the terms of the modification and spent several months negotiating for a shorter repayment period. See id. She alleges that Seterus representatives repeatedly assured her that she would have the option to modify her loan according to her desired terms, but Seterus ultimately refused to offer such a modification. See id. During the negotiations, Martino made at least one payment on the mortgage on June 27, 2016. See id. at ¶ 38. When Seterus refused to offer her desired terms, Martino signed and returned the Loan Modification Agreement ("August 2016 Agreement") in August 2016. See id. at ¶¶ 37–39. Seterus refused to accept the signed August 2016 Agreement and sent Martino a fresh copy of the Loan Modification Agreement ("October 2016 Agreement") to be signed and returned by October 19, 2016. See id. at ¶ 40.

In September 2016, Seterus placed Martino on another Trial Period Plan ("September Trial Plan"). See id. at ¶ 41. When Martino asked Seterus how much she should pay, a Seterus representative told her to pay $1,349.75, as detailed in the September Trial Plan. See id. at ¶ 42. Martino made that payment under the September Trial Plan on October 3, 2016. See id. The October 2016 Agreement was signed by Martino on October 17, 2016, and by Seterus on October 20, 2016. See id. at ¶¶ 44–45.

Martino alleges that Seterus did not honor the executed October 2016 Agreement, however, and continued to require Martino to make payments under the September Trial Plan amount. See id. at ¶ 46. Martino made two more payments under the September Trial Plan and completed the plan in December 2016. See id. at ¶

47.  Seterus, however, refused to offer Martino a modification after completion of the September Trial Plan because her loan had already been modified by the October 2016 Agreement.  <u>See</u> <u>id.</u> at ¶ 48.  In January 2017, Seterus began refusing Martino's mortgage payments and demanding back payments.  <u>See</u> <u>id.</u> at ¶ 49.  On March 1, 2017, Seterus initiated a foreclosure action against Martino.  <u>See</u> <u>id.</u> at ¶ 50.

The Amended Complaint contains six counts.  Counts One, Two, and Three against defendant Bank of America were dismissed with prejudice on February 9, 2018.  <u>See</u> Stipulation of Dismissal (Doc. No. 57).  Thus, Seterus is the only remaining defendant in the case.  Count Four alleges that Seterus breached the October 2016 Agreement.  Count Five alleges that Seterus negligently breached its duty of care "to evaluate and process homeowners' loan modification applications in a timely and accurate manner."  <u>See</u> <u>id.</u> at ¶¶ 90–95.  Count Six alleges that Seterus violated CUTPA by engaging in a number of unfair and deceptive acts.  <u>See</u> <u>id.</u> at ¶¶ 96–111.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim, that plain statement must allege facts sufficient to state a plausible claim for relief.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  While this plausibility standard does not require probability, it is not satisfied by "a sheer possibility that a defendant has acted unlawfully" or by facts

that are "merely consistent with a defendant's liability." Id. (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010); Jaghory v. N.Y. State Dep't Educ., 131 F.3d 326, 329 (2d Cir. 1997). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In those instances, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Trans. Local 504, 992 F.2d 12, 15 (2d Cir. 1993)).

## IV.    DISCUSSION

Seterus argues first that the court should abstain from deciding the case under the Colorado River doctrine because of a pending foreclosure action against Martino in state court. See Memorandum in Support of Motion to Dismiss ("Mem. in Supp.") (Doc. No. 47-1) at 8–10. Seterus then argues that, if the court declines to abstain, it should dismiss Counts Four, Five, and Six for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). See id. at 10–19.

A. Colorado River Abstention

Seterus argues that the court should abstain from deciding this case because there is a pending foreclosure action in state court (the "State Action").[3] See Mem. in Supp. at 8–10; Fannie Mae v. Martino, NNH-CV17-6068631-S (Conn. Super. Ct.). Seterus argues that the State Action and the case before this court are parallel and that the Colorado River abstention factors weigh in favor of abstention. See Mem. in Supp. at 8–10. Martino argues that the factors weigh against abstention, emphasizing that her rights cannot be adequately protected in state court. See Memorandum in Opposition to Motion to Dismiss ("Mem. in Opp.") (Doc. No. 53) at 7–12.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" Id. at 817 (citation omitted). This is because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." Id. Colorado River, however, permits "an extraordinary and narrow exception" when there are contemporaneous parallel proceedings in state court and

---

[3] Although the pending foreclosure action is not pled in the Amended Complaint, the court may consider "matters of which judicial notice may be taken." See Samuels, 992 F.2d at 15. Under this rule, the court may take judicial notice of public state court proceedings to establish the existence of the litigation. See Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (citation omitted)). In this case, Martino does not dispute the existence of the state foreclosure action. See Memorandum in Opposition to Motion to Dismiss ("Mem. in Opp.") (Doc. No. 53) at 7–12. Therefore, the court takes judicial notice of the fact that the foreclosure action is pending in state court. See Fannie Mae v. Martino, NNH-CV17-6068631-S (Conn. Super. Ct.).

abstention would serve "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 813.

In order for abstention under Colorado River to be justified, courts must first determine that the concurrent proceedings in state and federal court are parallel. See Dittmer v. Cty. of Suffolk, 146 F.3d 113, 117–18 (2d Cir. 1998). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Id. at 118 (quoting Day v. Union Mines Inc., 862 F.2d 652, 655 (7th Cir. 1988)). If the proceedings are parallel, the court must then weigh six factors:

> (1) the assumption of jurisdiction by either court over any res or property;
>
> (2) the inconvenience of the federal forum;
>
> (3) the avoidance of piecemeal litigation;
>
> (4) the order in which jurisdiction was obtained;
>
> (5) whether state or federal law supplies the rule of decision; and
>
> (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.

Vill. of Westfield v. Welch's, 170 F.3d 116, 121 (2d Cir. 1999). "The weight to be given any one factor may vary greatly from case to case, depending on the particular setting of the case." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). However, the balance is "heavily weighted in favor of the exercise of jurisdiction." Id. Therefore, courts should abstain under the Colorado River doctrine "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Colorado River, 424 U.S. at 813.

In this case, both parties' Memoranda focus on the analysis of the six Colorado River factors, but do not address whether the state foreclosure action and the case before this court are parallel. However, the court must first address the threshold issue of whether the cases are parallel. See Dittmer, 146 F.3d at 118 ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River."); Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) ("If a court finds that the federal and state cases are not parallel, 'Colorado River abstention does not apply, whether or not issues of state law must be decided by the federal court.'" (citation omitted)).

As stated above, "[s]uits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." Dittmer, 146 F.3d at 118. "In determining whether two actions are parallel for purposes of Colorado River abstention, 'a court may consider whether the actions involve the same (i) parties, (ii) subject matter, and (iii) relief requested.'" Gov't Employees Ins. Co. v. Leica Supply, Inc., No. 11-CV-3781 (KAM) (VVP), 2014 WL 1311544, at *4 (E.D.N.Y. Mar. 28, 2014) (citation omitted)); see National Union Fire Ins. Co. of Pittsburgh, PA v. Karp, 108 F.3d 17, 22 (2d Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.").

District courts in this Circuit have interpreted the Second Circuit's guidance in Dittmer and National Union Fire Insurance to not require "complete identity" or "perfect symmetry" of parties and issues, however. See, e.g., Server v. Nation Star Mortg., LLC, No. 3:16-CV-1582 (VLB), 2017 WL 3097493, at *3 (D. Conn. July 20, 2017); Gudge v.

8

109 Rest. Corp., 118 F. Supp. 3d 543, 547 (E.D.N.Y. 2015). "[T]he parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." Server, 2017 WL 3097493, at *3 (citation omitted). Nonetheless, "resolution of the state action must dispose of all claims presented in the federal case." DDR Constr. Servs., Inc. v. Siemens Indus., Inc., 770 F.Supp.2d 627, 644 (S.D.N.Y. 2011). "When 'the nature of the claims' in question differs, cases are not parallel despite 'the fact that both actions arise out of a similar set of circumstances.'" Id. at 645.

In this case, the parties in the State Action and in the case before this court are not identical, but they are substantially the same. Although Fannie Mae is a party in the State Action but not in this case, and Seterus is a party in this case but not in the State Action, Seterus is the servicer for the mortgage on behalf of Fannie Mae, the mortgagor. See Transcript, May 1, 2018 ("5/1/18 Tr.") (Doc. No. 88) at 4. The court concludes that Fannie Mae and Seterus share an identity of interests for the purpose of issues related to Martino's mortgage and foreclosure and therefore are substantially the same party. See Sitgraves v. Fed. Home Loan Mortg. Corp., 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017) ("Although [the plaintiff] argues the actions are not parallel because Freddie Mac is a party here but not in the State Action, she cannot contest that BANA is substantially the same as Freddie Mac."); Austin v. Everbank, No. 16-CV-00058-KG-LF, 2016 WL 9777221, at *6 n.3 (D.N.M. Sept. 30, 2016) ("In this federal action, Intervenor Fannie Mae is a party in privity of contract with Defendant Everbank through the fee simple interest Fannie Mae acquired in the foreclosure sale of the subject property.").

The plaintiff's Memorandum in Opposition to the Motion to Dismiss contains no argument that Fannie Mae and Seterus are not substantially the same party. <u>See</u> Mem. in Opp. at 7–12. At a hearing on the Motion to Dismiss, Martino advanced for the first time the argument that Fannie Mae may try to avoid liability for Seterus's misconduct, such as by arguing that Seterus acted outside the scope of its agency. <u>See</u> 5/1/18 Tr. at 26–27. Martino's representation to the court was equivocal at best, merely hypothesizing as to what Fannie Mae may possibly argue. <u>See</u> <u>id.</u> (stating that "[w]e <u>think it is possible</u> in the foreclosure case Fannie Mae <u>might</u> try to avoid liability for the misconduct on the part of Seterus" (emphasis added)). Martino did not articulate any basis for believing that Fannie Mae would actually make such an argument or have grounds to do so. <u>See</u> <u>id.</u> (arguing to the contrary that "we think that legal strategy ultimately would not be successful for them"). The court considers it telling that counsel for Martino, rather than clearly stating that Seterus and Fannie Mae are not substantially the same party, was merely able to state that "we're not certain they are the same for purposes of the foreclosure action." <u>See</u> <u>id.</u> Without more, Martino's brief and unsubstantiated statements at the hearing are insufficient to persuade the court that Fannie Mae and Seterus have divergent interests such that they are not substantially the same party for purposes of the mortgage and foreclosure.

The more difficult question here is whether the issues and relief are substantially the same. The Complaint in the State Action seeks foreclosure of Martino's property for default on the mortgage. <u>See</u> <u>Fannie Mae v. Martino</u>, Complaint. In her state court Answer, Martino does not raise any special defenses or counterclaims. <u>See</u> <u>Fannie Mae v. Martino</u>, Answer ("State Action Answer") (Doc. No. 102.00). Prior to issuing this

Ruling, the court gave Martino an opportunity to move to amend her Answer in the State Action to add as counterclaims the Counts before this court. See Order (Doc. No. 76). However, Martino represented that she elected not to move to amend her Answer. See Response to Order (Doc. No. 80). Thus, as the cases currently stand, the State Action does not address the same issues and relief as this case because the relief at issue in the State Action is only foreclosure (or defense against foreclosure), while the relief at issue in this case includes damages for breach of contract, negligence, and violation of CUTPA. Cf. Gov't Employees Ins., 2014 WL 1311544, at *4.

A number of other Circuits have held that whether the state and federal proceedings are parallel is determined by comparing "the issues in the federal action to the issues actually raised in the state action, not those that might have been raised." Baskin v. Bath Twp. Bd. of Zoning Appeals, 15 F.3d 569, 572 (6th Cir. 1994); see also Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 285 (3d Cir. 2017); Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 535 (8th Cir. 2009); Fox v. Maulding, 16 F.3d 1079, 1081 (10th Cir. 1994); Crawley v. Hamilton Cty. Comm'rs, 744 F.2d 28, 31 (6th Cir. 1984) ("While it may be true . . . that [the state action] could be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state action], as it currently exists, is a parallel, state-court proceeding."). A few district courts in this Circuit have followed these other Circuits. See Dalzell Mgmt. Co. v. Bardonia Plaza, LLC, 923 F. Supp. 2d 590, 598–99 (S.D.N.Y. 2013); State Farm Mut. Auto. Ins. Co. v. Schepp, 616 F. Supp. 2d 340, 347–48 (E.D.N.Y. 2008). Under this approach, it is evident that this case and the State Action would not be parallel proceedings and therefore that abstention under Colorado River would not be justified.

However, the court is hesitant to follow this approach and end the analysis there because no Second Circuit case has adopted such an approach with approval. Rather, language in <u>Telesco v. Telesco</u> appears to indicate that the Second Circuit, in determining whether proceedings are parallel, is willing to consider whether the state proceeding could be amended or modified to include the omitted claims raised before the federal court. See <u>Telesco v. Telesco Fuel & Masons' Materials, Inc.</u>, 765 F.2d 356, 362–63 (2d Cir. 1985). In <u>Telesco</u>, the plaintiff's federal complaint raised a new legal theory based on the existence of a de facto partnership between the parties and a new affirmative claim for reinstatement. <u>See</u> <u>id.</u> at 362. The Second Circuit nonetheless held that the proceedings were parallel because, "in its essential elements the same cause of action, regardless of theory or pleadings, is asserted in both counts." <u>Id.</u> The Second Circuit reasoned in part that the new legal theory could still be raised in the state action, citing the policy of state courts to be liberal in allowing amendments. <u>Id.</u> at 363 & n.7.

It appears to the court that the holding in <u>Telesco</u> could be read in two different ways. Read broadly, <u>Telesco</u> could be interpreted as holding that courts should "consider how the state proceedings could have been brought in theory, <u>i.e.</u>, what claims and parties could have been included had the federal plaintiff made a timely application to do so, and compare the theoretical state proceedings to the federal proceedings." <u>Fox</u>, 16 F.3d at 1081 (citing, and subsequently disagreeing with, <u>Telesco</u>). Read narrowly, however, <u>Telesco</u> could be interpreted as merely holding that a new legal theory that is essentially the same as a cause of action already raised in the state case is not sufficient to defeat the parallel nature of proceedings. See <u>Garcia v.</u>

Tamir, No. 99 CIV. 0298 (LAP), 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999). The narrow reading would still require essentially the same cause of action to be actually raised in the state case.

Here, the court need not determine what the Second Circuit intended in Telesco, however, because under either reading of Telesco, abstention would not be warranted. Under the narrow reading of Telesco, the proceedings are not parallel because there is no cause of action in the State Action with essentially the same elements as Martino's claims here because she has asserted no counterclaims in the State Action at all. See State Action Answer. Although this case concerns similar events as the State Action, the case is thus distinguishable from Telesco because the federal complaint in Telesco sought the same relief as in the state action. See Telesco, 765 F.2d at 362. The Telesco court stated that "the federal and state actions are essentially the same." Id. The same cannot be said for this case and the State Action, which seek different relief.[4]

_____

[4] The court acknowledges that, in at least two cases, the district court for this District found federal and state proceedings to be parallel, despite additional claims in the federal complaint that were not raised in the state case. See Server v. Nation Star Mortgage, LLC, No. 16-CV-1582 (VLB), 2017 WL 3097493, at *4 (D. Conn. Aug. 20, 2017); Bromfield v. Lend-Mor Mortgage Bankers Corp., No. 15-CV-1103 (MPS), 2016 WL 632443, at *4 (D. Conn. Feb. 17, 2016). Neither of these cases addressed Telesco, analyzed whether the additional claims were essentially the same as causes of action already raised in the state case, or analyzed whether the state case would resolve all of the claims in the federal complaint. Rather, these cases merely determined that the proceedings were parallel because the "main issue" in the state and federal proceedings, i.e., foreclosure of the property, was the same. See Server, 2017 WL 3097493, at *4 ("Server, Jr.'s contention that the FDCA and FTCA confer jurisdiction, and his reservation of rights of claims under these Acts as well as other state claims . . . do not distinguish the state and federal actions. The principle reason is because the 'main issue' is still identical: foreclosure of Server, Jr.'s property. The secondary reason is because this laundry list of federal and state regulations, without more, are not sufficient to distinguish the two cases."); Bromfield, 2016 WL 632443, at *4 (same).

Although the mortgage and foreclosure of Martino's property is also at issue in both this case and the State Action here, the court considers Server and Bromfield to be distinguishable because, in both, the courts found that the state action would be sufficient to resolve the federal complaint. See Server, 2017 WL 3097493, at *6 ("Here, state court is an appropriate vehicle for complete resolution because § 1624(e) entitles a state court to adjudicate TILA claims, the TILA issue has already been decided in state court, and the foreclosure matter is one for the state." (emphasis in original)); Bromfield, 2016 WL 632443, at *7 ("[B]ecause the Complaint relates solely to the State Foreclosure Action, and includes allegations Bromfield could have raised in that action, Bromfield does not state claims for a violation of

Under the broad reading of <u>Telesco</u>, the proceedings are still not parallel because, even allowing that the State Action could be modified, the court is not certain that all of Martino's claims here could be raised as counterclaims in the State Action. Because abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," <u>see</u> <u>Colorado River</u>, 424 U.S. at 813, "[a]ny doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction," <u>Mazuma Holding</u>, 1 F. Supp. 3d at 20 (citation omitted). <u>See also</u> <u>Moses H. Cone</u>, 460 U.S. at 28 ("When a district court decides to dismiss or stay under <u>Colorado River</u>, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.").

Connecticut law "narrowly circumscribes the special defenses and counterclaims that may be raised in foreclosure actions to those that relate to the 'making, validity, or enforcement of the note or mortgage,' with limited exceptions." <u>Bailey v. Interbay Funding, LLC</u>, No. 3:17-CV-1457 (JCH), 2018 WL 1660553, at *10 (D. Conn. Apr. 4, 2018) (quoting <u>U.S. Bank, N.A. v. Blowers</u>, 177 Conn. App. 622, 632 (2017)). In contrast to a special defense, a counterclaim must have some reasonable nexus to, but

---

any federal right. Moreover, '[n]one of the Plaintiff['s] submissions raise any question regarding the adequacy of [her] ability to enforce rights in the [Connecticut] courts.'" (alterations in original) (citation omitted)). Both courts assumed that the state action would be sufficient, however, without substantially analyzing whether the additional federal claims could have been brought as counterclaims in a state foreclosure action or whether they were essentially the same as the claims for damages in the state action. This court, however, considers such an analysis necessary in order to honor the Supreme Court's instruction in <u>Moses H. Cone</u> that, if there is any substantial doubt as to whether "the parallel state-court litigation will be an adequate vehicle for the <u>complete</u> and prompt resolution of the issues between the parties," it would be "a serious abuse of discretion" to abstain. <u>See</u> <u>Moses H. Cone</u>, 460 U.S. at 28 (emphasis added).

need not directly attack, the making, validity, or enforcement of the mortgage or note. See U.S. Bank, N.A. v. Sorrentino, 158 Conn. App. 84, 96–97 (2015). Typically, Connecticut courts have distinguished between pre-default conduct that allegedly induced the default and post-default conduct, such as during mediation or modification negotiations. When the counterclaims allege that the foreclosure-plaintiff's actions led the foreclosure-defendant to default, Connecticut courts have allowed those counterclaims as related to the enforcement of the mortgage. See U.S. Bank, N.A. v. Kosciusko, No. LLICV136008646S, 2016 WL 8488878, at *6, *9, *11 (Conn. Super. Ct. Nov. 8, 2016); Wahba v. JP Morgan Chase Bank, N.A., No. FSTCV136019828S, 2015 WL 5136407, at *4, *6 (Conn. Super. Ct. July 29, 2015); Bank of Am., N.A. v. Waskowicz, No. CV136022409, 2014 WL 4494474, at *1 (Conn. Super. Ct. July 30, 2014).

On the other hand, when the counterclaims only allege conduct during post-default mediation and loan modification negotiations, Connecticut courts have struck these counterclaims as lacking a sufficient nexus to the enforcement of the mortgage. See Blowers, 177 Conn. App. at 629–30; Sorrentino, 158 Conn. App. at 92–93; Kosciusko, 2016 WL 8488878, at *6; Bank of New York Mellon v. Mauro, No. MMXCV136009982, 2016 WL 1038943, at *5 (Conn. Super. Ct. Feb. 19, 2016); EMC Mortg. Corp. v. Shamber, No. CV075001252S, 2009 WL 4282900, at *10 (Conn. Super. Ct. Nov. 12, 2009). However, the Connecticut Appellate Court in Blowers recognized an exception to this general rule: "[I]f the modification negotiations ultimately result in a final, binding, loan modification, and the mortgagee subsequently breaches the terms of the new modification, then any special defenses asserted by the mortgagor in regard to

15

that breach would relate to the enforcement of the mortgage." <u>Blowers</u>, 177 Conn. App. at 30; <u>see also</u> <u>Bailey</u>, 2018 WL 1660553, at *10; <u>Bank of New York Mellon v. Malick</u>, No. CV166030339S, 2017 WL 5642465, at *2 (Conn. Super. Ct. Oct. 23, 2017) (applying the same exception to counterclaims for breach of contract based upon a valid modification); <u>Found. Capital Res., Inc. v. Prayer Tabernacle Church of Love, Inc.</u>, No. CV136036501S, 2016 WL 6395284, at *8 (Conn. Super. Ct. Sept. 29, 2016) (same).

Applying these rules, the court concludes that a substantial portion of Martino's claims in the Amended Complaint could have been brought as counterclaims in the State Action, had she moved and been granted leave to amend her Answer. Count Four for breach of contract falls squarely within the exception enumerated above because it alleges breach of a valid and binding modification agreement. <u>See</u> Am. Compl. at ¶¶ 82–89. Counts Five and Six for negligence and violation of CUTPA could also have been brought as counterclaims to the extent that they are similarly based on the breach of the October 2016 Agreement. <u>See</u> <u>id.</u> at ¶ 92 (basing the negligence claim in part on Seterus's "[f]ailing to honor the Loan Modification Agreement finalized in October 2016"); <u>id.</u> at ¶ 98 (basing the CUTPA claim in part on Seterus's "[b]reaching the Loan Modification Agreement even after both parties signed and executed it, making it a valid contract, in October 2016" and "[r]effusing to . . . honor the October Loan Modification Agreement").

However, not all of Martino's claims could have been properly raised as counterclaims in the State Action. Specifically, the court focuses on the allegations in Count Six that Seterus "[a]ssur[ed] Ms. Martino through its representatives that she would be able to modify her loan according to the terms she desired, then refus[ed] to

offer those terms."[5]  See id. at ¶ 98(d).  The court notes that the Amended Complaint is not entirely clear as to the timing of Martino's default or of Seterus's misleading assurances to Martino.  See Am. Compl. at ¶ 37 (not referencing a date as to when "Seterus representatives repeatedly assured her she might have options to modify her loan, according to her desired terms"); id. at ¶ 38 (alleging that Martino made one payment on June 27, 2016, but not specifying when the first payment was missed, placing her in default).  To the extent that Martino alleges that Seterus's misleading assurances induced her default, such a claim could be raised as a counterclaim in the State Action and therefore would not distinguish this case from the State Action under a broad reading of Telesco.  See Kosciusko, 2016 WL 8488878, at *6, *9, *11; Wahba, 2015 WL 5136407, at *4; Waskowicz, 2014 WL 4494474, at *1.  However, to the extent that Martino alleges that Seterus misled her about her eligibility for a loan modification after she defaulted, such a claim could not be raised as a counterclaim in the State Action.  Because the court must draw all reasonable inferences in favor of Martino in deciding a Motion to Dismiss, see Jaghory, 131 U.S. at 329, and because doubts regarding Colorado River must be resolved in favor of exercising jurisdiction, see Mazuma Holding, 1 F. Supp. 3d at 20, the court concludes that the allegations in the

---

[5] The court notes that others of Martino's claims are also unrelated to the breach of the modification agreement or the making, validity, or enforcement of the note and mortgage.  For example, both Count Five and Count Six allege that Seterus failed to investigate Martino's file and prior modification applications when the loan was transferred over from Bank of America.  See id. at ¶¶ 92(a), 98(a).  However, as discussed later in the Ruling, the court holds that these allegations fail to state a claim upon which relief can be granted.  Therefore, the court does not consider them in determining whether the cases are parallel for purposes of the Colorado River abstention.  The court focuses only on the CUTPA allegations that it considers to state a claim for relief that are unrelated to the breach of the modification agreement or to inducing Martino's default.

Amended Complaint plausibly state a CUTPA claim that would not be resolved by the State Action.

Accordingly, the proceedings are not parallel, even under the broader reading of Telesco. See DDR Const. Servs., 770F. Supp. 2d at 644 (stating that, for proceedings to be parallel, "resolution of the state action must dispose of all claims presented in the federal case" (emphasis added)). As noted above, any doubt on this question must be resolved in favor of exercising jurisdiction. See Moses H. Cone, 460 U.S. at 28. Because the cases are not parallel, the court declines to abstain, and it is not necessary to consider the six Colorado River factors.[6] See Mazuma Holding, 1 F. Supp. 3d at 20.

Although the court does not abstain here, the court notes that there is overlap with the state case. Should the state court reach judgment in the State Action first, the court will then consider whether it is precluded from deciding certain of Martino's claims as a result of res judicata or other preclusion doctrines. The court need not address such issues now, however.

B.      Breach of Contract (Count Four)

Count Four of the Amended Complaint alleges that Seterus breached the October 2016 Modification Agreement. See Am. Compl. at ¶¶ 82–89. Under Connecticut law, "[t]he elements of a breach of contract claim are formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." CCT Communications, Inc. v. Zone Telecom, Inc., 327 Conn. 114, 133

---

[6] Nonetheless, the court notes that, were it to consider the factors, Martino's inability to bring some portion of her CUTPA claims would weigh heavily in the court's analysis of the sixth factor: "whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." See Vill. of Westfield, 170 F.3d at 121.

(2017).  In this case, Martino alleges that Seterus breached the October 2016 Agreement by the following four actions: (1) "demanding and accepting payments from Ms. Martino in November and December 2016 at a rate different from that specified in the Loan Modification Agreement"; (2) "notifying Ms. Martino in December 2016 that her application for a loan modification had been rejected"; (3) "subsequently refusing Ms. Martino's loan payments and demanding back payments"; and (4) "initiating a foreclosure action against Ms. Martino on March 1, 2017."  Am. Compl. at ¶ 84.  Seterus does not dispute that the October 2016 Agreement is a binding contract.[7]  See Mem. in Supp. at 12–13.  Rather, Seterus argues that Martino's claims do not allege a breach of that contract.

As to Martino's allegation that Seterus breached the contract by rejecting her application for a loan modification in December 2016, Seterus argues that the October 2016 Agreement did not require it to grant Martino a modification after she completed the September Trial Plan.  See Mem. in Supp. at 13.  Martino's Memorandum in Opposition does not disagree with this argument or point to any term in the October 2016 Agreement that was breached by this conduct.[8]  See Mem. in Opp. at 14.  The

---

[7] The court notes that Seterus refers to the agreement as the "May 2016 Modification."  See Mem. in Supp. at 13.  However, this is an inaccurate description of the contract because the agreement was not signed and executed until October 2016.  See Am. Compl., Ex. D, at 6–7.  Therefore, the court considers it more accurate to refer to the agreement as the October 2016 Agreement.

[8] To the contrary, Martino's Memorandum states:

> Seterus states: 'the May 2016 Modification does not include any suggestion that the parties agreed to a further modification of terms of the Note and Mortgage.'  This is true, and supports Ms. Martino's claim. . . . Seterus's adherence to the trial plan after executing the permanent modification in October 2016 constituted breach of contract.

court likewise was not able to identify any term in the October 2016 Agreement that was breached by Seterus's refusal to grant Martino a modification in December 2016.[9] Therefore, to the extent that Count Four is based on this conduct, the Motion to Dismiss is granted, and that claim for breach of contract is dismissed.

As to Martino's remaining allegations, Seterus appears to argue that it did not breach the contract but, rather, that Martino first breached the contract and it merely exercised its option to pursue remedies preserved by the October 2016 Agreement. See Mem. in Supp. at 13–14. Specifically, Seterus argues that Martino breached the contract in two ways: by paying less than the amount specified by the October 2016 Agreement, and by failing to cure her default on the loan, which was already four months in arrears when the October 2016 Agreement was signed. See id.

Martino acknowledges that, for the months of November and December 2016, she paid $1,349.75, $17.33 less than the $1,367.08 specified in the October 2016 Agreement. See Mem. in Opp. at 14; Am. Compl. at ¶¶ 42, 47. She argues, however, that "Seterus breached by preventing her from paying the full $1,367.08." Mem. in Opp. at 14; see Am. Compl. at ¶¶ 46–47 (alleging that Seterus required Martino to continue making payments at the amount specified in the September Trial Plan rather than the

_____

Mem. in Opp. at 14. Thus, Martino appears to concede that Seterus's rejection of her modification application in December 2016 was not a breach of contract, and she elects instead to focus on her other allegations of breach.

[9] The court notes that it is possible that the rejection of her modification application could have breached another agreement, if one existed (for example, as part of the September Trial Plan). See Henderson v. Wells Fargo Bank, NA, No. 3:13-CV-378 (JBA), 2016 WL 324939, at *4–*5 (D. Conn. Jan. 27, 2016). However, the Amended Complaint does not allege that any binding agreement was formed regarding the September Trial Plan or that such an agreement, if formed, was breached. Nor does the Memorandum in Opposition advance such an argument. Rather, Count Four appears to be based solely on the October 2016 Agreement. See Am. Compl. at ¶ 83.

October 2016 Agreement and accepted those payments for the months of November and December 2016).

Connecticut contract law recognizes the doctrine of prevention: "[I]f a party to a contract 'prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return promise, [that party] is not relieved of the obligation to perform, and may not legally terminate the contract for nonperformance.'" Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Connecticut, 311 Conn. 123, 176 (2014) (quoting 13 R. Lord, Williston on Contracts (4th ed. 2000), § 39:3; see also Godburn v. Meserve, 130 Conn. 723, 726 (Conn. 1944) ("[I]f the plaintiffs on their part were prevented by the [defendant] from completing the contract, they were entitled to bring their action for damages for her breach of it."); Zipp v. JFC Endeavors, Inc., No. CV105014884, 2011 WL 1366906, at *16 (Conn. Super. Ct. Mar. 18, 2011) ("Furthermore, in such a case, the promisor may not invoke the other party's nonperformance as a defense if sued upon by the contract."). Therefore, if Seterus prevented Martino from making payments required by the October 2016 Agreement, it cannot declare default and seek foreclosure based on that failure.

In order for conduct to amount to prevention, it must be "wrongful in the sense of being violative of [the party's] obligations under the contract." Godburn, 130 Conn. at 727. Thus, Connecticut courts have inquired into whether the conduct was "fairly within the contemplation of the parties when the agreement was entered into." Id. "The prevention doctrine does not require proof that the condition [or performance] would have occurred 'but for' the wrongful conduct of the promisor; instead it only requires that the conduct have 'contributed materially' to the non-occurrence of the condition." R&L

21

Acoustics v. Liberty Mut. Ins. Co., No. CV000380506S, 2001 WL 1249658, at *4 n.5

(Conn. Super. Ct. Sept. 27, 2001); see also Restatement (Second) Contracts § 245

("Where a party's breach by non-performance contributes materially to the non-

occurrence of a condition of one of his duties, the non-occurrence is excused.").

"Whether interference by one party to a contract amounts to prevention so as to excuse

performance by the other party and constitute a breach by the interfering party is a

question of fact . . . ." Surowaniec v. Coppola Dev., LLC, No. CV126017813S, 2014 WL

4494742, at *5 (Conn. Super. Ct. Aug. 1, 2014).

In this case, Martino alleges that Seterus "required Ms. Martino to continue

making payments under the Trial Period Plan it placed her into in September 2016."

Am. Compl. at ¶ 46.  It then accepted those payments in November and December

2016, but then began demanding back payments in January 2017, and intiated

foreclosure in March 2017.  See id. at ¶ 46–50.  At the motion to dismiss stage, the

court accepts all factual allegations in the Amended Complaint as true and draws all

reasonable inferences for Martino.  See Jaghory, 131 F.3d at 329.  Based on Martino's

allegations, one could reasonably infer that it was not within the contemplation of the

parties in making the October 2016 Agreement that Seterus would require Martino to

make payments in an amount different than specified in the Agreement.  One could also

reasonably infer that Seterus requiring Martino to pay a different amount contributed

materially to Martino's failure to pay the full amount required by the terms of the October

2016 Agreement.  Therefore, Martino has sufficiently alleged that Seterus prevented her

from performing under the contract, and the Motion to Dismiss is denied on this ground.

The more difficult question is whether Martino was already in breach of the October 2016 Agreement when it was executed because she failed to pay the amounts required beginning June 1, 2016. The Amended Complaint alleges that, during the negotiations, which presumably began in May 2016, Martino made one payment on her mortgage on June 27, 2016. See Am. Compl. at ¶¶ 36–38. The next payment alleged in the Amended Complaint was made on October 3, 2016. See id. at ¶ 42. Therefore, according to Seterus, Martino was already in default when the October 2016 Agreement was executed on October 20, 2016.[10] See Mem. in Supp. at 13–14. Martino does not address this argument in her Memorandum. See Mem. in Opp. at 13–15. She does state, in relation to her CUTPA claim, however, that "Ms. Martino reasonably believed that Seterus, having itself delayed the implementation of the agreement through fruitless negotiations and then offered an identical agreement anew, would not then torpedo the agreement by immediately placing her in default." Id. at 29.

The court considers the question of whether Martino breached the contract by not making retroactive payments for the months in arrears to be a question of contract interpretation. The October 2016 Agreement states, "Borrower [Martino] promises to make monthly payments of principal and interest of U.S. $555.62,[11] beginning on the 1st of June 2016, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full." Am. Compl., Ex. D, at 1. However, the

---

[10] Seterus argues that Martino was four months in arrears. See Mem. in Supp. at 14. The court is uncertain how Seterus reaches that number because the Amended Complaint appears to indicate that Martino made a payment in June and in October, see Am. Compl. at ¶¶ 38, 42, and thus missed payments in July, August, and September for a total of three months. However, the difference between three months and four months does not affect the court's analysis here.

[11] The total payment becomes $1,367.08 when the required escrow payment in the amount of $811.46 is added. See Am. Compl., Ex. D, at 2.

Agreement also states that it was "made this 12th day of May, 2016," id. at 1, when it was in fact executed on October 20, 2016,[12] see id. at 6.

The discrepancy between the date the contract says it was executed and the date it was actually executed creates an ambiguity. "A latent ambiguity arises from extraneous or collateral facts which make the meaning of a written instrument uncertain although the language thereof be clear and unambiguous." Thomasi v. Thomasi, 181 Conn. App. 822, 835 (2018) (quoting Heyman Associates No. 1 v. Ins. Co. of Pennsylvania, 231 Conn. 756, 782 (1995)). Here, if the contract were executed on May 12, 2016, as the contract states, payments would have begun on the first day of the next month, i.e., June 1, 2016. However, because the contract was executed on October 20, 2016, not May 12, 2016, the contract is subject to two possible interpretations. One interpretation reads the date on which payments are to begin as June 1, 2016, regardless of the date of execution, thereby requiring Martino to make retroactive payments. Another interpretation reads the June 1, 2016 date of performance to be tied to the May 12, 2016 date of execution, such that payments should begin on the first day of the month following the execution of the contract, which would be November 1, 2016.

In light of the ambiguity in the contract, the court must draw all reasonable inferences in favor of Martino in deciding a Motion to Dismiss. Reading the contract as a whole, it would not be unreasonable to adopt the second interpretation. Nothing in the language of the contract discusses or contemplates retroactive payments. Under the

---

[12] Although the parties spend much energy arguing over which party bears the fault for the delay, see, e.g., Mem. in Supp. at 14, 17–18; Mem. in Opp. at 27–28, this does not affect the court's interpretation of the ambiguity in the contract language.

first interpretation, Martino would immediately have been in default of the mortgage and in breach of the contract upon executing the October 2016 Agreement. It would be strange for the parties to enter into a contract intending such a result. Furthermore, the parties could have agreed that a lump sum payment would be due upon execution of the October 2016 Agreement in an amount equal to the payments that were missed during the negotiation process. However, the October 2016 Agreement contains no such provision, leaving ambiguous whether any retroactive payments were required or not. Therefore, in light of such ambiguities, Martino has sufficiently alleged facts supporting a plausible interpretation of the October 2016 Agreement that would not find her in breach of the Agreement for failure to make payments for months prior to the Agreement's execution. Accordingly, the Motion to Dismiss is denied on this ground.

In sum, Count Four is dismissed to the extent that it claims that Seterus breached the October 2016 Agreement by "notifying Ms. Martino in December 2016 that her application for a loan modification had been rejected." See Am. Compl. at ¶ 84. Count Four survives the Motion to Dismiss on the remaining three allegations.

C.    Negligence (Count Five)

First, Seterus argues that Martino's negligence claim should be dismissed because Seterus does not owe Martino a duty of care in reviewing and processing Martino's loan modification applications. See Mem. in Supp. at 14–15. Second, Seterus argues that, even if it owed Martino a duty of care, Martino's allegations fail to state a claim that Seterus breached that duty of care. See Mem. in Supp. at 15–17.

Martino's allegations of negligence can be divided into two categories: those that relate to Seterus's alleged breach of the October 2016 Agreement and those that do not. The allegations relating to the breach include: (1) "[f]ailing to honor the Loan

Modification Agreement finalized in October 2016 and instead continuing the September Trial Period Plan"; and (2) "[u]ltimately initiating foreclosure against Ms. Martino as a result of its own negligent mishandling of her mortgage despite her continued good faith efforts to pay her mortgage." Am. Compl. at ¶ 92(c), (e). The allegations unrelated to said breach include: (1) "[f]ailing to fully investigate and evaluate Ms. Martino's incomplete file upon receipt from Bank of America"; (2) "[i]nitiating the September Trial Period Plan despite the parties' ongoing efforts to finalize the permanent modification"; and (3) "[f]ailing to offer Ms. Martino a permanent modification when she completed the September Trial Period Plan on the grounds that her loan had already been modified." Id. at ¶ 92(a), (b), (d).

Regarding the negligence claims related to Seterus's breach of the October 2016 Agreement, Martino argues that a duty of care arose out of the contract. See Mem. in Opp. at 15–16. "The existence of a duty of care is an essential element of negligence." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375 (1982). The court agrees with Martino that a duty of care can arise out of a contractual relationship. See Gazo v. City of Stamford, 255 Conn. 245, 263 (2001) ("It is true, of course, that out of a contractual relationship a tort liability, as in negligence, may arise." (citation omitted)); Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 579 (1995) ("The [plaintiffs] were not barred from pursuing a negligence claim solely because they also might have had a breach of contract claim."). Therefore, Martino has plausibly alleged a duty of care arising out of the October 2016 Agreement.

Seterus's only other arguments against Martino's negligence claims arising out of the breach of the October 2016 Agreement merely repeat arguments the court has

already rejected in its discussion of Count Four.  See Mem. in Supp. at 17 (arguing that

Martino was already in default of the loan by four months at the time the October 2016

Agreement was executed).  Therefore, the court concludes that Martino has stated a

claim that Seterus negligently breached its duty arising out of the contractual obligations

of the October 2016 Agreement.[13]

In contrast, Martino's allegations of negligence that are unrelated to Seterus's

breach of the October 2016 Agreement cannot be based on a duty arising out of that

Agreement.  The claims that Seterus failed to investigate Martino's file when it was

transferred from Bank of America in December 2015, or January 2016, or that Seterus

negligently initiated the September Trial Plan in September 2016, occurred before the

October 2016 Agreement was executed.  See Am. Compl. at ¶¶ 32, 92(a), (b).

Therefore, no contractual duty existed at the time.  Additionally, the court previously

held above that no term in the October 2016 Agreement requires Seterus to offer a

permanent modification after any Trial Period Plan.  See supra at 18–19.  Thus, no duty

arising out of the October 2016 Agreement reaches the allegation that Seterus failed to

_____

[13] The court notes that Martino would not be permitted to recover under both the breach of contract and negligence causes of action if they are duplicative.  See Walters v. Howmedica Osteonics Corp., 676 F. Supp. 2d 44, 53 (D. Conn. 2009); Batchelar v. Interactive Brokers, LLC, No. 3:15-CV-01836 (VLB), 2016 WL 5661980, at *5 (D. Conn. Sept. 28, 2016); Bonan v. Goldring Home Inspections, Inc., 68 Conn. App. 862, 870–72 & n.7 (2002).  However, because Seterus has not raised that argument, the court declines to dismiss on those grounds at the motion to dismiss stage.  The court notes that some Connecticut Superior Courts have permitted both claims to proceed at the motion to dismiss stage when "all of the necessary elements of negligence have been properly pleaded."  See Trimani v. Grand Contractors, LLC, No. MMXCV126008427S, 2013 WL 5780784, at *2 (Conn. Super. Ct. Oct. 1, 2013); Von Pein v. Magic Bristles, LLC, No. CV126008266S, 2013 WL 453048, at *4 (Conn. Super. Ct. Jan. 8, 2013) ("While the plaintiffs may not be permitted to recover under both causes of action if it is found that the plaintiffs are attempting to bring the same cause of action twice, it would be improper at this stage to strike the second count for negligence because all of the necessary elements of negligence have been properly pleaded."); cf. Brightview Nursing & Ret. Ctr., Ltd. v. Sopel, No. HHDCV136042818S, 2015 WL 4098317, at *3 (Conn. Super. Ct. June 5, 2015);.

offer Martino a permanent modification after she completed the September Trial Plan. See Am. Compl. at ¶ 92(d).

Martino argues alternatively that Seterus owed her a common law duty of care. See Mem. in Opp. at 16–22. "[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in this case." Ruiz v. Victory Properties, LLC, 315 Conn. 320, 328–29 (2015) (citation omitted). The second public policy prong requires the court to consider four factors: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions . . . ." Id. at 337 (citation omitted).

Neither the Connecticut Supreme Court nor the Connecticut Appellate Court has provided guidance as to how these factors should be considered in the context of loan modification applications or negotiations. See Blanco v. Bank of Am., N.A., No. HHDCV156060162S, 2016 WL 2729319, at *6 (Conn. Super. Ct. Apr. 20, 2016) (noting that "no appellate authority is directly on point"). Some Connecticut Superior Courts, however, have held that lenders do not owe borrowers a duty of care in negotiating loan modifications or reviewing modification applications. See Cenatiempo v. Bank of Am., N.A., No. FSTCV166028846S, 2017 WL 1194206, at *1, *7 (Conn. Super. Ct. Feb. 17,

2017) (dismissing a negligence claim that "the [modification] process was unreasonably

protracted due to errors, misplaced documents, misrepresentations of the status of the

process, etc."); Blanco, 2016 WL 2729319, at *6–*7; Devine v. Nationstar Mortg., LLC,

No. CV166031849S, 2016 WL 7443995, at *2 (Conn. Super. Ct. Nov. 21, 2016);

Kosciusko, 2016 WL 8488878, at *9 (finding no duty of care where the lender "failed to

maintain consistent conduct, provide correct information, or agree to alternatives

provided by the defendants").  Martino's allegations of negligence here are similar to the

allegations in these cases.  See Am. Compl. at ¶ 92(a), (b), (d).  Thus, the court looks to

the reasoning of the Connecticut Superior Courts for guidance.

    In Blanco, the plaintiff alleged, inter alia, that the defendant negligently "failed to

exercise reasonable diligence in reviewing his loan modification applications; requested

duplicative and unnecessary documentation or updates during the application process;

wrongfully commenced a foreclosure action while reviewing his loan modification

applications; . . . and caused undue delay in offering him a permanent loan

modification."  Blanco, 2016 WL 2729319, at *2.  The court assumed, without deciding,

that the injury was foreseeable, but held that recovery was not permitted under the

public policy prong.  See id. at *6.  The court found that the first factor weighed in favor

of the plaintiff because "it is reasonable for the mortgagor to expect that the lender or

loan servicer will carefully process and review the application in a timely manner."  Id.

However, the court found this to be outweighed by the second and third factors:

> [I]mposing a duty on a lender or loan servicer in this context
> would ultimately frustrate the loan modification process and
> would likely lead to increased litigation.  Entities in the
> defendant's position would be less inclined to even entertain
> loan modification applications, which principally benefit
> mortgagors, if there was a chance that such entities could be

29

> exposed to civil liability. . . . [C]reating a novel duty that breaks new ground in the lender-borrower context may lead to a significant increase in litigation. . . . [I]ncreased litigation in this particular context would significantly frustrate, if not permanently eliminate, the loan modification process.

Id. Lastly, the court found the fourth factor "not particularly helpful" because "no clear consensus exists" among other jurisdictions. Id. at *6–*7 & n.8. The Cenatiempo court affirmed the Blanco court's analysis of the public policy factors. See Cenatiempo, 2017 WL 1194206, at *5. It further reasoned that lenders may require a release of claims, leading to further new litigation, that recognizing a cause of action here leads to line-drawing problems, and that other remedies are available. See id. at *6–*7.

Martino argues that Blanco and Cenatiempo are flawed because they fail to consider the benefits of a loan modification for the mortgage industry, how the financial situation of borrowers and the availability of counsel will affect the likelihood of litigation, and the impact of regulations and statutes, such as Regulation X. See Mem. in Opp. at 23–24. The court notes that the plaintiffs in Cenatiempo similarly argued that the Blanco court "did not pay sufficient attention to the policy issues they have raised," including policy-creating statutes, such as the Real Estate Settlement Procedures Act ("RESPA") that Regulation X relates to. See Cenatiempo, 2017 WL 1194206, at *5. The Cenatiempo court, however, rejected the plaintiffs' argument, finding that the Blanco court mentioned such statutes and settlements in a footnote, indicating that the court "clearly was aware of the issues and clearly was not persuaded." Id.; Blanco, 2016 WL 2729319, at *3 n.3.

Here, the court does not consider Martino's public policy arguments persuasive enough to depart from the reasoning of the Connecticut Superior Courts in Blanco, Cenatiempo, and their progeny. Martino has not identified any Connecticut court that

has adopted its proposed reasoning on the public policy factors.  Like the plaintiff in

Blanco, then, Martino "is effectively asking this court to create a duty of care where one

has not previously existed."  Id. at *6.  The court declines to do so here in the absence

of any indication from Connecticut state courts that such a duty of care exists.[14]  Thus,

the Motion to Dismiss is granted on these claims.

In sum, Count Five is dismissed to the extent it is based on allegations unrelated

to the breach of the October 2016 Agreement.  Martino may proceed on Count Five to

---

[14] Martino cites a number of Connecticut Superior Court cases that she argues supports the existence of a duty of care between a borrower and a servicer.  See Mem. in Opp. at 24.  None of these, however, are persuasive.

First, Martino cites Chacon v. Ocwen Loan Servicing and Hansen v. Wells Fargo Bank, but provides only the Orders from those cases, which are brief and contain no analysis.  See Mem. in Opp. at 24 (citing Chacon v. Ocwen Loan Servicing, LLC, No. NNH-CV115-6054564-S (Conn. Super. Ct. 2015); Hansen v. Wells Fargo Bank, No. FBT-CV14-6042087-S (Conn. Super. Ct. 2014); id., Ex. A (stating only that the motion to strike is denied); id., Ex. B (same, with brief discussion of the CUTPA claim, but no discussion of the negligence claim).

Martino also cites Tanasi v. CitiMortgage, Inc. and EMC Mortgage Corp. v. Shamber, in which the court found a statutory duty of care under RESPA and Regulation X.  See Tanasi v. CitiMortgage, Inc., 257 F. Supp. 3d 232, 272–73 (D. Conn. 2017); EMC Mortg. Corp. v. Shamber, No. CV075001252S, 2009 WL 4282900, at *11–*12 (Conn. Super. Ct. Nov. 12, 2009).  Neither of these cases addresses the foreseeability or public policy analysis required to find a common law duty, and Martino has not argued that Seterus owed her a statutory duty of care.  See Tanasi, 257 F. Supp. 3d at 273 ("Statutory negligence is actionable upon satisfaction of two conditions: (1) the plaintiff must be a member of the class protected by the statute; and (2) the injury must be of the type the statute was intended to prevent."); Mem. in Opp. at 18–21 (mentioning RESPA and Regulation X in analyzing the public policy prong of a common law duty, but not addressing either of the conditions required for statutory negligence, as laid out in Tanasi).

Finally, the remaining cases cited by Martino are not on point.  Martino describes Cosme v. Bank of America as holding that the "servicer was negligent in providing status about loan at issue," but the court reads no such holding in the case.  See Mem. in Opp. at 24 n.9; Cosme v. Bank of Am., N.A., No. TTDCV146007738S, 2014 WL 5472123, at *3 (Conn. Super. Ct. Sept. 30, 2014) (striking the claim for negligent infliction of emotional distress).  The other cases cited are all unrelated to loan modification.  See MTGLQ Inv'rs, L.P. v. Baron, No. CV085023741S, 2010 WL 4722131, at *1–*2 (Conn. Super. Ct. Oct. 26, 2010) (relating to negligence in damaging the mortgaged property); Argent Mortg. v. Wyrick, No. CV054015105, 2007 WL 1053412, at *3–*4 (Conn. Super. Ct. Mar. 27, 2007) (relating to a duty to inform the plaintiff about an insurance policy, once obtained); People's Bank v. Perkins, No. CV 310482, 1994 WL 621969, at *4 (Conn. Super. Ct. Nov. 3, 1994) (relating to negligence in calculating interest rates and accounting).  Additionally, MTGLQ Investors and Perkins contain no analysis or discussion regarding the existence of a duty.

the extent that it based on negligent breach of a duty arising out of the October 2016 Agreement.  However, if the negligence claim is duplicative of the breach of contract claim, she may not ultimately recover twice for the same cause of action.[15]

D.    CUTPA (Count Six)

Count Six of the Amended Complaint alleges that Seterus engaged in unfair and/or deceptive acts or practices in violation of CUTPA, Conn. Gen. Stat. § 42-110b. See Am. Compl. at ¶¶ 96–111.  CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b (2018).  In determining whether a practice violates CUTPA, the Connecticut Supreme Court has instructed that courts are to consider the criteria set out in the cigarette rule: "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co., 318 Conn. 847, 880 (2015) (quoting Ulbrich v. Groth, 310 Conn. 375, 409–10 (2013)).  "All three criteria do not need to be satisfied to support a finding of unfairness."  Id. at 880–81.

Martino's Amended Complaint includes a laundry list of conduct she alleges to be unfair and/or deceptive.  See Am. Compl. at ¶ 98.  As with Count Five, the court analyzes these allegations in two categories: those that are related to the breach of the

_____

[15] See note 13.

32

October 2016 Agreement and those that are not. Alleged deceptive or unfair acts related to the breach of the October 2016 Agreement include: (1) "[b]reaching the Loan Modification Agreement even after both parties signed and executed it, making it a valid contract, on October 2016"; (2) "requiring her to make payments on [the September Trial Plan] even after it had executed the Loan Modification Agreement"; (3) "[r]efusing to . . . honor the October Loan Modification Agreement"; and (4) "[w]rongfully refusing mortgage payments from Ms. Martino and initiating foreclosure proceedings against her." Id. at ¶ 98(f), (g), (h), (j).

Allegations of deceptive or unfair acts unrelated to the breach of contract include: (1) "[f]ailing to investigate or losing any and all evidence of the Modification Agreement between Bank of America and Ms. Martino and/or a pending loan modification application from Ms. Martino to Bank of America, during and as a result of the mortgage-loan servicing change"; (2) "[f]ailing to correct errors and maintain accurate records on Ms. Martino's mortgage loan after receiving servicing rights"; (3) "[f]orcing Ms. Martino to begin the modification process anew after her loan was transferred to Seterus"; (4) "[a]ssuring Ms. Martino, through its representatives, that she would be able to modify her loan according to the terms she desired, then refusing to offer those terms"; (5) "[f]ailing to properly process the Loan Modification Agreement Ms. Martino returned in August 2016"; (6) "[p]utting Ms. Martino in a second Trial Period Plan before the Loan Modification Agreement was finalized"; (7) "[r]efusing to . . . offer Ms. Martino a new permanent modification after she successfully made all required payments on the second Trial Period Plan"; and (8) "[c]ommunicating with Ms. Martino through a rapidly changing cast of customer service representatives who were uninformed about her

situation, gave her conflicting and inaccurate information, and did not take the necessary actions to modify her loan after she complied with the terms of her Trial period Plan and signed the Loan Modification Agreement." Id. at ¶ 98(a), (b), (c), (d), (e), (g), (h), (i).

Seterus's Memorandum is not well-organized on this Count, so it is not clear which arguments it raises pertain to which allegations. However, it appears to the court that Seterus generally advances three arguments. First, Seterus argues that Martino was responsible for delaying the execution of the October 2016 Agreement and, therefore, the loan was already "in default by four (4) months as soon as it was modified." See Mem. in Supp. at 18. Second, Seterus argues that Martino failed to allege an ascertainable loss because her alleged loss is nonspecific and was permitted under the terms of the loan because she was already four months in arrears. See id. at 19. Third, Seterus argues that the allegations about the manner in which it reviewed Martino's loan modification applications are legally insufficient to state a CUTPA claim. See id. at 18–19.

The first of Seterus's arguments appears to pertain to Martino's allegations that Seterus violated CUTPA by breaching the October 2016 Agreement. "[I]t is well established that a breach of contract may, but does not necessarily, rise to the level of a CUTPA violation." Ulbrich, 310 Conn. at 432; see Boulevard Assocs. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1038–39 (2d Cir. 1995) (stating that a simple breach of contract is not sufficient to state a CUTPA claim). To state a claim for a violation of CUTPA, the breach must be accompanied by substantial aggravating circumstances. See Ulbrich, 310 Conn. at 411 ("CUTPA was intended to provide a remedy that is

separate and distinct from the remedies provided by contract law when the defendant's contractual breach was accompanied by aggravating circumstances."). "Conduct that has been held to be substantial aggravating circumstances sufficient to support CUTPA claims includes fraudulent representations, fraudulent concealment, false claims . . . and multiple breaches of contract." MedPricer.com, Inc. v. Becton, Dickinson & Co., 2014 WL 3700992, at *3 (D. Conn. July 25, 2014) (quoting Leonard v. Tobacco Const., LLC, 2012 Conn. Super. LEXIS 1267, at *6 (Conn. Super. Ct. May 10, 2012)).

Seterus's first argument merely repeats the same arguments it raised against Martino's breach of contract claim in Count Four, arguing that Seterus did not breach the contract because Martino was already in default. Compare Mem. in Supp. at 18; with id. at 14. Thus, the court rejects that argument here for the same reasons that it did so under Count Four. See supra at 21–24. Beyond arguing that Martino was in breach, Seterus does not challenge the sufficiency of the aggravating circumstances alleged in the Amended Complaint, see Am. Compl. at ¶ 99, so it is not necessary for the court to address those allegations. Additionally, to the extent that Seterus's second argument, challenging Martino's allegations of ascertainable loss, is likewise based on this same contention that Martino was in arrears on the loan, the court also rejects this argument for the same reasons.

Seterus also argues that Martino failed to allege an ascertainable loss because her allegations of loss are nonspecific. See Mem. in Supp. at 19. Martino alleged that she suffered an ascertainable loss including "payment of improper fees and charges" and "excess interest charges along with interest on that interest."[16] Am. Compl. at ¶

---

[16] Martino's Memorandum also claims the loss of a contract, the October 2016 Modification, as part of her ascertainable loss. See Mem. in Opp. at 36. However, she does not allege the loss of the

108.  To state a claim under CUTPA, a plaintiff must allege "that he has suffered an ascertainable loss due to a CUTPA violation."  Artie's Auto Body, Inc. v. Hartford Fire Ins. Co., 287 Conn. 208, 218 (2008).  "An ascertainable loss is a loss that is capable of being discovered, observed or established. . . .  A loss is ascertainable if it is measurable even though the precise amount of the loss is not known."  Id.  Therefore, the plaintiff need not allege the amount of the loss.  See Johnson Electric Co. v. Salce Contr. Assocs., 72 Conn. App. 342, 354–55 (2002).

Given that the fees and charges are measurable and capable of being discovered, Martino's allegations of improper fees and excess interest charges are sufficient to state a claim for ascertainable loss at the motion to dismiss stage, even without specifying an amount.  See Tanasi v. CitiMortgage, Inc., 257 F. Supp. 3d 232, 276–77 (D. Conn. 2017) (finding "professional fees in attempting to apply for a mortgage modification, attorneys' fees, postage, copying, and other miscellaneous expenses" to be sufficient to allege an ascertainable loss); Vaccaro v. U.S. Bank, N.A., No. CV146050373S, 2016 WL 8488123, at *10 (Conn. Super. Ct. Nov. 8, 2016) (recognizing "increased fees and interest due on their mortgage" as one way the plaintiffs could have alleged an ascertainable loss, if they resulted from the deceptive act).  Thus, Martino has stated a claim that Seterus violated CUTPA by breaching the October 2016 Agreement, and the Motion to Dismiss is denied as to that claim.

Seterus's remaining argument, against Martino's CUTPA claims unrelated to the breach of the October 2016 Agreement, mirrors the argument raised against her

_____

contract as part of her ascertainable loss in Count Six of the Amended Complaint.  See Am. Compl. at ¶ 108.  Therefore, the court does not discuss it here.

negligence claim. However, Martino's allegations under Count Six go beyond the allegations under Count Five. Here, Martino alleges that Seterus misled her with misrepresentations about her loan modification options by "[a]ssuring Ms. Martino, through its representatives, that she would be able to modify her loan according to the terms she desired, then refusing to offer those terms." Am. Compl. at ¶ 98(d). In contrast, Martino's negligence claim does not raise any allegations of negligent misleading or misrepresentation. See Am. Compl. at ¶ 92. The court considers these additional allegations significant in distinguishing Count Six from Count Five.

The same cases cited above in the court's discussion on negligence also state that allegations that the defendant delayed in reviewing a loan modification application or refused to offer a permanent modification after negotiation are insufficient to state a claim under CUTPA. See Cenatiempo, 2017 WL 1194206, at *7; Blanco, 2016 WL 2729319, at *3–*4; see also Wells Fargo Bank, N.A. v. Riverview E. Windsor, LLC, No. CV096004927, 2010 WL 5610864, at *8 (Conn. Super. Ct. Dec. 22, 2010). In Blanco, the Connecticut Superior Court stated:

> Notwithstanding the plaintiff's arguments that the defendant assumed a duty to diligently review his loan modification documentation upon receipt, refusing to negotiate a loan modification prior to proceeding to foreclosure does not rise to a violation of CUTPA. Thus, allegations pertaining to the manner in which the defendant reviewed a loan modification application while also electing to commence foreclosure are legally insufficient to state a cognizable CUTPA claim.

Blanco, 2016 WL 2729319, at *4.

However, in other cases, Connecticut Superior Courts, as well as courts in this District, have reached the opposite conclusion when the defendant's negotiations or review of the modification application involved misleading misrepresentations made to

the borrower.  See Tanasi, 257 F. Supp. 3d at 252, 274–75 (holding that the plaintiffs

sufficiently stated a claim that the defendant violated CUTPA by, inter alia, "misleading

consumers about its loss mitigation policies, misleading consumers concerning the

availability of loss mitigation policies, and 'improperly charging Plaintiffs fees, interest,

and other charges to which it [wa]s not entitled'" (citation omitted)); Henderson v. Wells

Fargo Bank, NA, No. 3:13-CV-378 (JBA), 2016 WL 324939, at *6–*7 (D. Conn. Jan. 27,

2016); Kosciusko, 2016 WL 8488878, at *11; Wahba, 2015 WL 5136407, at *5–*8; JP

Morgan Chase Bank, N.A. v. O'Neil, No. FSTCV096002552S, 2014 WL 7462603, at *6

(Conn. Super. Ct. Nov. 18, 2014).[17]  The Tanasi court held that the allegations of

---

[17] The court notes that some of these cases involve misrepresentations that induced the default and therefore stated CUTPA claims that could be raised as counterclaims in the state foreclosure action. See Kosciusko, 2016 WL 8488878, at *11; Wahba, 2015 WL 5136407, at *4.  However, that is not true of all of the above cases.  See Tanasi, 257 F. Supp. 3d at 261 (holding that the CUTPA claims, except for unfairly applying the existing loss mitigation policies, were "not transactionally related to the Foreclosure Action"); Henderson, 2016 WL 324939, at *6–*7 (making no mention of whether the misrepresentations caused or came after the default).  Therefore, the court's conclusion here that Martino has sufficiently stated a CUTPA claim is not inconsistent with its earlier decision not to abstain under Colorado River, as Martino may plausibly state a claim under CUTPA that, like the claim in Tanasi, is not transactionally related to the default or foreclosure.

Martino does argue in her Memorandum that Seterus's misrepresentation caused Seterus to place her in default and initiate the foreclosure.  See Mem. in Opp. at 27 ("Ms. Martino reacted reasonably by believing the representatives that she had a chance at shortening her repayment period, and this misrepresentation materially affected Ms. Martino by causing her to delay signing the May Agreement, which ultimately lead [sic] to Seterus alleging Ms. Martino was in default and placing her in foreclosure.").  As discussed above, both the Amended Complaint and Memorandum in Opposition are not clearly drafted in terms of the timing of the default in comparison to the timing of the misrepresentations.  See supra at 15–16 (citing Am. Compl. at ¶¶ 37–38).  Thus, the court is not certain whether Martino alleges that Seterus made misrepresentations, causing her to miss payments and thereby enter default, or that Seterus made misrepresentations about her options for modification after default, causing her to delay signing the agreement and thereby prompting Seterus to initiate foreclosure on her already defaulted loan.  The court held above that it resolves doubts for Colorado River abstention purposes in favor of exercising jurisdiction.  See id.

Similarly, it is difficult for the court to distinguish the exact nature and timing of the alleged misrepresentations for the purposes of evaluating Martino's CUTPA claim under Rule 12(b)(6).  However, the court determines that the allegations are sufficient at this stage of the litigation when it must draw all reasonable inferences in favor of Martino.

"CitiMortgage's confusing and deceptive communications with vulnerable borrowers violated an important public policy." Tanasi, 257 F. Supp. 3d at 275.

Additionally, the Cenatiempo court distinguished its case from these other cases in part because "all of the cases appear to have had some level of malfeasance of the lender or servicer, especially with respect to proposing and consummating modification (or new) agreements or appearing to do so (and as a corollary, it was at the instance of the lender or servicer that a modification had been proposed)." Cenatiempo, 2017 WL 1194206, at *2. In contrast "[a]ny claims of misrepresentation in [Cenatiempo] were not material, unlike the situations in the cited cases." Id. at *4.

Here, the factual allegations in the Amended Complaint would benefit from improvements in clarity[18] and do not allege as strong a case of "malfeasance" as some of the cases cited above, for example, in which the defendants employed a deceptive scheme "enticing" borrowers who were not in arrears to voluntarily default. See Wahba, 2015 WL 5136407, at *6. However, Martino does allege that Seterus misled her with assurances about her ability to obtain a modification with her desired terms and then refused to offer her those terms. See Am Compl. at ¶ 98(d). One could reasonably infer that these misrepresentations were material to Martino's decisions regarding her negotiations regarding and signing of the October 2016 Agreement. Thus, unlike Count Five, Count Six alleges more than mere mishandling and delay in processing her modification application, or initiating the September Trial Plan. Martino's CUTPA claim is therefore more similar to the second set of cases than to Blanco or Cenatiempo. Drawing all reasonable inferences for Martino, the court concludes that Martino has

---

[18] See supra 15–16 and note 17.

alleged facts that could support an inference that Seterus's misrepresentations offended public policy and were immoral and unethical, causing substantial injury to consumers like Martino.

Accordingly, the Motion to Dismiss is denied as to Count Six.

## V.    CONCLUSION

For the reasons stated above, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  Counts Four and Five are each dismissed in part, as detailed above, and Martino is permitted to proceed on the remaining allegations in those Counts, in addition to Count Six.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 23rd day of July, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge